UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: MARION C. JOHNSON | CASE NO. 11-01229-KMS |
| DEBTOR | CHAPTER 13 |
| COUNTRY CREDIT, LLC | PLAINTIFF |
| V. | ADV. NO. 11-00084-KMS |
| MARION C. JOHNSON | DEFENDANT |

## MEMORANDUM OPINION

This matter came before the Court for trial on January 24, 2012, (the "Trial") on the Complaint Objecting to Dischargeability of a Debt (Adv. Dkt. No. 1) filed by Country Credit, LLC ("Country Credit") and the Answer to Complaint (Adv. Dkt. No. 4) filed by Marion C. Johnson ("Johnson"). At Trial, Clinton Ashley Atkinson represented Country Credit and J. Thomas Ash represented Johnson. By stipulation, the parties introduced eleven exhibits. These exhibits and the testimony of the parties were the only evidence presented at Trial. The Court, having considered the evidence, finds that the obligation is dischargeable for the reasons set forth below.[1]

## I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(I). Notice of the Trial was proper under the circumstances.

---

[1] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

## II. FINDINGS OF FACT

On April 1, 2011, Johnson filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi ("Court"). (Dkt. No. 1). On July 15, 2011, Country Credit filed an adversary complaint ("Complaint") (Adv. Dkt. No. 1) against Johnson seeking a declaratory judgment that the indebtedness[2] she owed to Country Credit is nondischargeable under 11 U.S.C. § 523(a)(2)(B)[3]. The Complaint asserts that Johnson "failed to disclose a debt to the Internal Revenue Service (the "IRS"), Think Cash, a payday lender, and a mortgage payment to American Home Servicing" on her application for a loan with Country Credit. (Compl. 1, ¶ V).[4]

### A. Country Credit Loan Application

Johnson's relationship with Country Credit began in the summer of 2009 when Johnson met with Regina, a Country Credit loan officer, to obtain a loan. Johnson testified that at this initial meeting, she disclosed her tax obligations to Regina.[5] The 2011 Loan was Johnson's third loan with Country Credit.[6] On January 13, 2011, Dana Foy ("Foy"), a Country Credit employee, telephoned Johnson about a delinquent payment and offered to loan her an additional $500.00.

---

[2] The evidence and testimony established that the debt in question (the "20ll Loan") was a renewal of an existing loan with new debt of $500.00.

[3] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code, unless otherwise noted.

[4] The Complaint also asserts that, in January of 2011, Johnson valued the collateral given for security for the loan at $3,900.00 in her application, but valued the collateral at $500.00 on her bankruptcy petition filed on April 1, 2011. At trial, the parties did not address the issue of valuation or offer any evidence as to the allegation. Thus, the Court will not address this issue.

[5] Specifically, Johnson testified that "when I originally started dealing with Country Credit I did let Regina know that I had an IRS debt and she asked me was I paying on the IRS debt, and I told her 'no I wasn't.'"

[6] Johnson testified that she had three loans with Country Credit; however, neither party offered the loan documents or any details of the first and second loans into evidence.

Johnson testified that, during the conversation, Dana only asked "if everything was the same" to which she replied "yes," reasoning that "to the best of [her] knowledge, nothing had changed." The next day, January 14, 2011, Johnson arrived at the Country Credit office where she signed the promissory note, loan application and other documents that had been completed by a Country Credit employee prior to her arrival.[7]

## B. Johnson's Alleged Misstatements and Omissions

### 1. IRS Tax Obligation

The loan application signed by Johnson specifically inquired about delinquent tax obligations. (Pl.'s Ex. 2, Question 7). None were identified.[8] Johnson acknowledged that she was aware of her outstanding tax obligations when she signed the loan application, however she explained that she did not read the documents before signing,[9] the questionnaire was completed by a Country Credit employee prior to her arrival and Country Credit knew about the obligation because she had disclosed it to Regina when she originally started dealing with Country Credit.

---

[7] Johnson admitted to signing the promissory note and loan application, which contained language vouching for the truth of all information on the application above the signature line, as well as a separate form attesting to the accuracy of the application.

[8] Johnson testified that, in 2006, she changed jobs and withdrew a portion of her 401(k); however, funds were not withheld to cover taxes and penalties for early withdrawal. The IRS audited her and assessed the taxes in 2009. Johnson further testified that there is no tax lien, the IRS has not sent any demand, and that the IRS retains her tax refunds for payment of the past-due taxes.

[9] At trial, Johnson admitted that she did not read the documents before signing because she was familiar with the transaction, as this was her third loan with Country Credit, and she knew that she had to repay the loan.

### 2. Mortgage Payment

The documents signed by Johnson did not identify a mortgage payment or that one was contemplated.[10] (Compare loan application (Pl.'s Ex. 2) and budget (Pl.'s Ex. 4), which listed no mortgage or rent payment, with bankruptcy schedules (Dkt. No. 4, at 9, 17), which listed a mortgage payment of $632.00 per month). Johnson testified that she did not have a mortgage obligation at the time she obtained the 2011 Loan. The undisputed testimony established that Johnson obtained a divorce in 2007. At the time of her divorce, Johnson was not a signatory to the mortgage loan on her residence. As part of the divorce settlement, her ex-husband continued to make the mortgage payments until she could assume the mortgage. Johnson testified that the "loan modification" process began in 2010, the approval took almost six months to obtain and she was not obligated to pay the mortgage until February of 2011, at which time she started making payments.[11] Johnson acknowledged that she did not inform Country Credit of the potential, future house payment/pending assumption, reasoning that she had "no guarantee that it would go through."

### 3. Payday Loan

Country Credit also asserts that Johnson failed to disclose a loan with Think Cash, a payday lender, on her application. Johnson's unrefuted testimony was that she did not have a payday loan with Think Cash or any other payday lender at the time that she signed the Country Credit application.

---

[10] Question 13 on the Loan Application Addendum asks, "Do you anticipate making any loans in the next 30 days?" The answer "No" was circled. (Pl.'s Ex. 2, Question 13). Question 12 asks, "Do you anticipate a change in residence in the next twelve months?" The answer "No" was circled. (Pl.'s Ex. 2, Question 12). No mortgage or rent payment was identified in the Budget. (Pl.'s Ex. 4).

[11] No documentation regarding the loan assumption was offered into evidence by either party. Further, no rebuttal testimony was provided.

4

## C. Country Credit's Loan Approval Policies

According to Misty King ("King"), Manager of Country Credit, the company extends loans if the borrower's budget indicates that he or she has the ability to repay the loan. If net disposable income on the budget is negative, Country Credit will not approve the loan. King testified that if the mortgage payment of $632.00 per month, listed in Johnson's bankruptcy schedules, had been disclosed, Country Credit would not have approved the 2011 Loan because Johnson's budget would have reflected negative net disposable income.[12] Regarding the IRS claim, King testified that Country Credit would not necessarily decline a loan based on outstanding tax liabilities; however, "it would have been taken into consideration" because the IRS has the power to garnish wages, which would reduce the income available to pay Country Credit.

King testified that she personally reviewed Johnson's loan application (Pl.'s Ex. 1) and on January 14, 2011, prior to Johnson's arrival at County Credit to sign the loan documents, made and initialed the following notation:

> "OK
> $500
> Get current Ck stub & verify
> Get more property
> Hold here
> MK"

Although the items in the notation were the conditions required to make the loan, King admitted that she approved the loan before Johnson signed the documents. Foy testified that she signed certain of the loan documents as a witness. According to those documents, Foy signed as a

---

[12] Before taking a $632.00 per month mortgage payment into account, Johnson's net disposable income was $181.00 per month. (Pl.'s Ex. 4).

5

witness on January 13, 2011, the day before Johnson appeared to sign the documents.[13] When questioned about the discrepancy, Foy responded that she must have written the incorrect date. However, the Account Payoff Screen and Promissory Note, which were admitted into evidence, indicated that the loan was made on January 13, 2011. (Pl.'s Ex. 8, 11).

### III. CONCLUSIONS OF LAW

Section 523(a)(2)(B) excepts from discharge any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>
> use of a statement in writing[14]--
>
> **(i)** that is materially false;
>
> **(ii)** respecting the debtor's or an insider's financial condition;[15]
>
> **(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> **(iv)** that the debtor caused to be made or published with intent to deceive

11 U.S.C. § 523(a)(2)(B); *Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995). To except Johnson's debt from discharge under § 523(a)(2)(B), Country Credit bears the burden of proving each of

---

[13] The following exhibits were signed and dated by Foy, as a witness, on January 13, 2011: (1) Arbitration Agreement (Pl.'s Ex. 9); and (2) Disability Form (Pl.'s Ex. 10). In addition, the Disclosure Statement, Promissory Note and Security Agreement (Pl.'s Ex. 8) and the Loan Payoff Screen for Johnson's Account (Pl.'s Ex. 11) indicate the date of the loan as January 13, 2011.

[14] "As long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met." *Tower Credit, Inc. v. Williams (In re Williams)*, 431 B.R. 150, 157 (Bankr. M.D. La. 2010) (*citing Cadle Co. v. Orsini*, 2007 WL 1006919, at *5 (E.D. Tex. 2007)). The parties do not dispute this requirement.

[15] "Section 523(a)(2)(B) applies not only to documents styled as 'Financial Statements', but to any false statements made in written loan applications." *FDIC v. Lefeve (In re Lefeve)*, 131 B.R. 588, 593 (Bankr. S.D. Miss. 1991). The parties do not dispute this requirement.

the required elements by a preponderance of the evidence.[16] *See Grogan v. Garner*, 498 U.S. 279, 287-88 (1991); *see also Young v. Nat'l Union Fire Ins. Co. of Pittsburg (In re Young)*, 995 F.2d 547, 549 (5th Cir. 1993); Gen*. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F. 2d 367, 272 (5th Cir. 2005). Exceptions to discharge must be strictly construed against the creditor and liberally construed in favor of the debtor. *Lanier v. Futch (In re Futch)*, Adv. No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011); *see Mammel v. Pierce (In re Pierce)*, Adv. No. 10-3408, 2011 WL 2312037, at *1 (Bankr. N.D. Tex. June 10, 2011); *Fezler v. David (In re Davis)*, 194 F.3d 570, 573 (5th Cir. 1999); *Hudson v. Raggio & Raggio (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997); *Jordan v. Se. Nat'l Bank (Matter of Jordan),* 927 F.2d 221, 224 (5th Cir.1991) (rationale of reading nondischargeability provisions narrowly "is to help preserve the Code's basic policy of giving an honest debtor a fresh start").

**A. Materially False Statement**

The Fifth Circuit has stated that "a materially false statement is one that 'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Byrd v. Bank of Miss.*, 207 B.R. 131, 136 (S.D. Miss. 1997) (*citing Jordan,* 927 F.2d at 224 *(overruled in part by Coston v. Bank of Malvern (Matter of Coston),* 991 F.2d 257 (5th Cir.1993)).[17] "In determining whether a false statement is material, a relevant although not dispositive inquiry is 'whether the lender would have made the loan had he known the debtor's true situation.'" *Byrd*, 207 B.R. at 136*.* The Fifth Circuit further stated that "it is well established that writings with pertinent omissions *may*

---

[16] "A fact is proven by a preponderance of the evidence if the Court finds it more likely than not the fact is true." *Lanier v. Futch (In re Futch)*, Adv. No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909-10 (5th Cir. 1993)).

[17] *Coston* overruled *Jordan* to the extent it held that reasonable reliance is a conclusion of law subject to de novo review.

qualify as 'materially false' for purposes of § 523(a)(2)(B)." *Jordan*, 927 F.2d at 224 (internal citation omitted) (emphasis added).

The Court finds credible Johnson's unrebutted testimony that she did not know whether she would be approved to assume the mortgage on her home within 30 days after applying for the loan with Country Credit, if at all, such that the questions on the Loan Application Addendum were answered truthfully.[18] Further the Court finds that Johnson did not have a mortgage payment at the time she obtained the 2011 Loan, and therefore, did not make a misrepresentation when she failed to include a mortgage payment on the budget submitted to Country Credit. Likewise, it was undisputed that Johnson did not have a payday loan at the time she obtained the 2011 Loan. Consequently, Country Credit has failed to establish an omission related to a payday loan or a mortgage.

The evidence supports the finding that the only "false statement" in the loan application is the omission of Johnson's outstanding tax liabilities. According to Country Credit, the tax liabilities would have been considered in deciding whether to approve the 2011 Loan because, although Johnson was not currently paying the obligation, her income could have been affected if the IRS garnished her wages for payment. Counsel for Country Credit maintains that if the mortgage and tax claims were known, the bank would not have made the loan. However, no testimony established whether Country Credit would or would not have extended the loan, absent the mortgage, if only the tax claim had not been disclosed.

**B. Reasonable reliance**

"Because creditors might induce debtors to falsify financial statements in order to make a debt nondischargeable, Congress explicitly required that nondischargeability under § 523(a)(2)(B) be premised upon a showing of reasonable reliance." *Allison v. Roberts (Matter of*

---

[18] *See supra* note 10.

*Allison)*, 960 F.2d 481, 484 (5th Cir. 1992) (*citing* H.R.Rep. No. 595 Cong., 1st Sess. 103-31 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787). The Fifth Circuit has held that reasonableness of reliance under § 523(a)(2)(B) is a factual determination to be made in light of the totality of the circumstances. *Coston*, 991 F.2d at 261; *see also Byrd,* 207 B.R. at 137; *Am. Bank of Commerce v. Powell (In re Powell),* 423 B.R. 201, 212 (Bankr. N.D. Tex. 2010). The Fifth Circuit further articulated that the court may consider, among other things:

> (1) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust;
>
> (2) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and
>
> (3) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Id.* (citations omitted).

The Court is not convinced that Country Credit reasonably relied on any misrepresentation or omission in Johnson's loan application and related documents. According to the record, Country Credit approved the loan *before* Johnson reviewed and signed the loan documents.[19] This fact alone demonstrates that Country Credit did not rely on the representations or omissions in the loan application at all. *See Brown v. Beneficial California, Inc.*, 217 B.R. 857, 864 (Bankr. S.D. Cal. 1998) (creditor, knowing the falsity of the debtor's representations and financial statements, which were prepared by the creditor's employee, made the decision to loan before debtor signed the financial statements, thus, creditor did not reasonably rely on debtors representations or financial statements at all).

---

[19] The Disclosure Statement, Promissory Note and Security Agreement (Pl.'s Ex. 8), Schedule A – Security Evaluation (Pl.'s Ex. 2), Insurance Policy (Pl.'s Ex. 10), and the Account Payoff Screen (Pl.'s Ex. 11) all expressly provide that the loan was made on January 13, 2011, the day *before* Johnson reviewed and signed the loan application and financial statements. Further, King testified that she approved the loan prior to Johnson's review and signing.

Moreover, the unrefuted evidence established that Country Credit had knowledge of Johnson's outstanding tax obligation from her prior dealings with the creditor. Notwithstanding this fact, Country Credit approved the 2011 Loan. *See Beneficial*, 217 B.R. at 864 (reliance not justified where creditor has knowledge of falsity of financial information and makes loan anyway). Further, the company's representative did not establish that the loan would have been denied if the tax obligation had been disclosed, but only that it would have been taken into consideration. Based on the evidence presented at Trial, Country Credit did not reasonably rely on the alleged misrepresentation or omission of Johnson regarding the tax obligation.

## IV. CONCLUSION

Country Credit failed to prove that it reasonably relied on Johnson's false statements regarding her outstanding tax obligation as required to except a debt from discharge under § 523(a)(2)(B). Accordingly, the debt is dischargeable. Pursuant to § 523(d), the Court will consider an award of costs and attorney fees upon proper motion filed within fourteen (14) days of the entry of this opinion, along with supporting fee itemization, so that a final judgment may be entered by the Court.